# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

BAKER COUNTY MEDICAL
SERVICES, INC., etc.,

    Plaintiff,

v.                                CASE NO. 4:04cv488-RH/WCS

FRINGE BENEFITS MANAGEMENT
COMPANY,

    Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

      This is an action by a hospital against the third-party administrator of the hospital's employee health plan. The hospital seeks relief solely for breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), not based on state law. Because the third-party administrator was not performing fiduciary duties under ERISA when it undertook the acts at issue, I grant the third-party administrator's motion for summary judgment.

# I

Plaintiff Baker County Medical Services, Inc., operates a hospital. For convenience, plaintiff is referred to in this order as "the hospital." The hospital provides health coverage for its employees and their families.

The hospital entered a contract with United Benefits, Inc. under which United Benefits was to provide various administrative services in connection with the hospital's employee health plan. In common parlance, United Benefits became the "third-party administrator" of the plan, responsible for such things as processing claims by covered persons (the hospital's employees and their families). Defendant Fringe Benefits Management Company succeeded to United Benefits' duties under the third-party administrator contract.[1]

---

[1] Fringe Benefits bought most of United Benefits' assets during the contract term but did not assume United Benefits' liabilities. United Benefits ceased operations. The hospital and Fringe Benefits continued to perform in accordance with the contract's provisions without amending the contract or otherwise explicitly recognizing that Fringe Benefits had succeeded to United Benefits' position. When the contract between the hospital and United Benefits reached its termination date, the hospital declined to execute a new contract with Fringe Benefits. But the hospital and Fringe Benefits still continued to perform in accordance with the original contract's terms. It was at that point—after the original contract's termination date but while the hospital and Fringe Benefits were continuing to perform thereunder—that the events at issue in this case occurred. The hospital asserts with some force that the contract was binding at that point and thus imposed enforceable duties on Fringe Benefits. *See, e.g., Sosa v. Sherform Mfg.*, 784 So. 2d 609 (Fla. 5th DCA 2001). Fringe Benefits disagrees, apparently asserting that at that point it owed the hospital no enforceable duties at all. I assume, for purposes of this order, that the contract was binding and enforceable

The hospital reduced its exposure under the employee health plan by purchasing excess loss insurance.  Dissatisfied with the cost of its existing coverage, the hospital assigned Fringe Benefits to solicit alternative proposals.  The hospital itself, however, retained the final authority to decide whether, from whom, and on what terms to obtain excess loss coverage.  Fringe Benefits presented proposals from several insurers.  The hospital selected Companion Life Insurance Company, based on Fringe Benefits' presentation of its proposal.

One of the persons covered by the hospital's employee health plan has been identified by the parties as "Mr. G," the husband of an employee.  Mr. G had a preexisting condition making it likely he would need substantial and expensive health care.  Companion's proposed excess loss coverage included a special reserve for Mr. G, substantially raising the hospital's self-insured exposure for his claims.  The hospital asserts that Fringe Benefits never advised the hospital of, or provided the hospital any documents referring to, the special reserve.  The hospital asserts it never agreed to any such special reserve.  Fringe Benefits asserts, in contrast, that the hospital did know of and approve the special reserve.  This is a disputed issue of fact.

During the relevant period, Mr. G incurred health care expenses covered by the hospital's plan.  The hospital paid the expenses as it was obligated to do.

---

against Fringe Benefits at all times at issue.

Because of the special reserve, the hospital's recovery from Companion based on the payments to Mr. G was substantially less than it otherwise would have been. The hospital seeks to recover the difference in this litigation.

The hospital bases its claim solely on ERISA. The hospital explicitly does *not* seek recovery in this action under state law. The parties have filed cross-motions for summary judgment. I grant Fringe Benefits' motion and direct the clerk to enter judgment dismissing the hospital's ERISA claim with prejudice.[2]

**II**

ERISA federalized a great portion of the law governing employee benefit plans. It is *not* true, however, that all contracts relating in any way to an ERISA plan are governed entirely by ERISA. In starkest terms, if a plan hires an

---

[2] The reason for the hospital's reliance in this action solely on ERISA may be that attorney's fees are recoverable under ERISA, unlike under the common law of Florida. Also, ERISA provides a basis for federal jurisdiction. The parties are not diverse. The hospital has made no attempt to invoke supplemental jurisdiction and to assert a state law claim, and although after the summary judgment hearing (and in response to the court's inquiries) the hospital indicated it would be willing now to assert such a claim in order to expedite final resolution of the matter in this forum (trial is imminent), the third-party administrator has objected to any amendment at this point. Whether supplemental jurisdiction could have been exercised over any such claim at the outset, or could be exercised now, may be unclear, but ultimately this makes no difference. In light of the final resolution of the federal claim in this order, I decline to exercise supplemental jurisdiction over any state law claim the hospital might seek to assert. Dismissal of this action will be without prejudice to the assertion of a state law claim in an appropriate forum.

administrator to make a final determination of claims, the administrator's performance of its claims-determination duties is governed by ERISA.  But if a plan hires a contractor to replace the carpet, ERISA has nothing to do with it; the contractor's duties are governed by state law.  And if the plan hires the same entity both to determine claims and to replace the carpet, the entity's claims-determination duties still are governed by ERISA, while its carpet-installation duties still are governed by state law.

ERISA achieves this result by imposing on any "fiduciary," as defined in the Act, a federal duty to discharge the fiduciary's duties with respect to the plan "solely in the interest of the participants and beneficiaries."  29 U.S.C. §1104(a)(1).  For these purposes, a "fiduciary" is defined as follows (with an exception not here relevant):

> a person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A) (emphasis added).

As the Supreme Court has made clear, this definition renders an entity a "fiduciary" only "to the extent" it was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). This is critical to the outcome in the case at bar and bears repeating: an entity is not a fiduciary once and for all, for all purposes; instead, an entity is a fiduciary only *to the extent* it is performing a fiduciary function when taking the action at issue.

In the case at bar, the third-party administrator agreement under which Fringe Benefits was operating placed substantial responsibilities on Fringe Benefits in connection with the determination of claims by covered persons for health benefits. Fringe Benefits asserts the hospital retained final decision making authority over claims determinations, and that Fringe Benefits therefore was not acting as a fiduciary when it processed such claims.[3] It is not at all clear, however,

---

[3] An entity that merely processes claims without making a final decision lacks "discretionary authority" or "control" over claims and thus ordinarily is not acting as a fiduciary in this respect. *See, e.g., Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 289 (11th Cir. 1990); *Howard v. Parisian, Inc.*, 807 F.3d 1560, 1564-65 (11th Cir. 1987); *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122-25 (7th Cir. 1994); *Kyle Railways, Inc. v. Pacific Admin. Serv., Inc.*, 990 F.2d 513 (9th Cir. 1993).

that Fringe Benefits lacked final decision-making authority over claims.[4]  I assume, for purposes of this decision, that Fringe Benefits was a "fiduciary" when performing its claims-processing duties.

As *Pegram* makes clear, however, the issue is not whether Fringe Benefits was a fiduciary in some respects; the issue is whether Fringe Benefits was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram*, 530 U.S. at 226.  The action subject to complaint was the solicitation and presentation of proposals for excess loss insurance.  Fringe Benefits was not acting as a fiduciary when performing these functions, as a point by point analysis of the statutory definition of a "fiduciary" makes clear.

Although divided into three numbered clauses, the definition actually has four parts.  First, a person is a fiduciary to the extent "he exercises any discretionary authority or discretionary control respecting management of such

---

[4] The governing agreement stated that the determination of claims "shall initially rest" with the third-party administrator but provided that, in the event the hospital determined the third-party administrator had misinterpreted the plan, the hospital could so advise the administrator, after which the hospital's interpretation would be followed.  *See* Doc. 38, ex. 1, Admin. Serv. Agreement §3(c).  Further, by agreement of the hospital and administrator, the hospital's interpretation could be applied retroactively.  *Id.*  Not all claims determinations issues, however, turn on interpretations of the plan; some rest on factual issues.  In some instances, therefore, Fringe Benefits apparently had final decision making authority with respect to claims.

plan." 29 U.S.C. §1002(21)(A)(i).  Fringe Benefits was not acting as a fiduciary under this provision for two reasons.  First, procurement of the excess loss policy was not part of management *of the plan*, because the excess loss policy provided benefits solely for the hospital, not for covered persons.  This is clear both from the policy's plain terms[5] and from the law governing such coverage.[6]  And second,

---

[5] The excess loss insurance policy provided that payments would be made "to the Insured."  Doc. 38, ex. 4, Policy §IV.1.  The insured was the hospital.  The policy provided further that "the Company" (that is, the excess loss insurer, Companion Life Insurance Company) would

> have neither the right nor the obligation under this Policy to directly pay any Covered Person or provider of professional or medical services for any benefit which the Insured has agreed to provide under the terms of the Employee Benefit Plan.  The Company's sole liability hereunder is to the Insured . . . .

Policy §VI.1.

[6] *See generally* 13A  John A. Appleman & Jean Appleman, *Insurance Law and Practice* §§7681, 7693 (1976).  An apparently unbroken line of decisions concludes that excess loss or reinsurance proceeds that are not payable to persons covered by a plan are outside the scope of ERISA.  *See Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355, 1360 (9th Cir. 1997) (holding a claim by an employer against a third-party administrator for failure to obtain reinsurance not governed by ERISA "because the alleged harm involved not administrative claims processing, but only a failure to obtain reinsurance for the employer"); *Thompson v. Talquin Bldg. Products Co.*, 928 F.2d 649, 653 (4th Cir. 1991) ("Instead of covering employees directly, the stop-loss insurance covers the Plan itself."); *Strategic Outsourcing, Inc. v. Commerce Benefits Group Agency, Inc.*, 54 F. Supp. 2d 566, 573 (W.D.N.C. 1999) ("Reinsurance coverage does not provide insurance benefits for the plan participants but instead is in the nature of excess liability coverage for the employer and, as such, fails outside the scope of both the plan and ERISA."); *Union Health Care, Inc. v. John Alden Life Ins. Co.*,

Fringe Benefits had no "discretionary authority or discretionary control" even with respect to procurement of the excess loss coverage, because the hospital retained for itself the ultimate authority to decide whether, from whom, and on what terms to obtain excess loss coverage.[7]

The second prong of the definition makes a person a fiduciary to the extent he "exercises any authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. §1002(21)(A)(i). In procuring the excess loss coverage, Fringe Benefits was not acting as a fiduciary under this part of the definition, because the excess loss policy was not an asset *of the plan*.[8]

---

908 F. Supp. 429 (S.D.Miss. 1995); *Consumer Benfit Assoc. of the United States v. Lexington Insurance Co.*, 731 F.Supp. 1510 (M.D.Ala. 1990).

[7] The hospital asserts that, although it retained this authority, it was rendered meaningless as a practical matter by Fringe Benefits' approval of the special reserve without even telling the hospital about this provision. But Fringe Benefits never claimed or purported to exercise the final authority to procure excess loss coverage. To the contrary, Fringe Benefits brought proposals to the hospital, the hospital chose Companion Life Insurance Company, and that choice was implemented. One who advises on matters of this type but does not decide is not an ERISA fiduciary, and this remains true even if the advice is given poorly. If, as the hospital asserts, Fringe Benefits failed to apprise the hospital of the relevant terms of the coverage, then Fringe Benefits breached its duty to the hospital—but that does not change the nature of the duty from that of an agent without final decision making authority (governed by state law) into that of an ERISA fiduciary.

[8] The excess loss policy provided benefits to the hospital, not to covered persons. Characterizing the policy as an asset of the plan would bring it into conflict with 29 U.S.C. §1103(c), which requires that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive

The third prong of the definition makes a person a fiduciary to the extent "he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. §1002(21)(A)(ii).  In procuring excess loss coverage, Fringe Benefits was not rendering investment advice.

Finally, the fourth prong of the definition makes a person a fiduciary to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A)(iii).  This is much like the first prong of the definition, which deals with "management" rather than "administration" of the plan.  Fringe Benefits was not a fiduciary under this provision for the same two reasons set forth above with respect to the first prong of the definition:  procuring excess loss coverage for the benefit of the hospital, not covered persons, was not "administration of such plan," and Fringe Benefits did not, in any event, have "discretionary" authority or responsibility in light of the hospital's retention of final decision making authority.

---

purposes of providing benefits to participants in the plan and their beneficiaries. . . ."

### III

In sum, Fringe Benefits was not acting as an ERISA "fiduciary" when it procured excess loss coverage. Its duty to the hospital with respect to the procurement of such coverage thus was governed by state law, not by ERISA. Accordingly,

IT IS ORDERED:

Defendant's motion for summary judgment (document 47) is GRANTED. Plaintiff's motion for summary judgment (document 44) is DENIED. The clerk shall enter judgment stating, "Plaintiff's claims are dismissed. The dismissal is with prejudice with respect to claims arising under federal law. The dismissal is without prejudice with respect to claims arising under state law. The court declines to exercise supplemental jurisdiction over claims arising under state law."

SO ORDERED this 12th day of August, 2005.

s/Robert L. Hinkle  
Chief United States District Judge
